HENRY S. HAINES, AND ANOTHER, PLAINTIFFS-RESPONDENTS, v. BURLINGTON COUNTY BRIDGE COMMISSION, AND OTHERS, DEFENDANTS-APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued May 28, 1951—Decided July 2, 1951.

Before Judges JACOBS, EASTWOOD and BIGELOW.

*Mr. Milton M. Unger* argued the cause for the appellants (*Messrs. Milton M.* and *Adrian M. Unger* and *Messrs. Robert L. Hood* and *Thomas D. Begley,* attorneys; *Mr. Sam Denstman,* on the brief).

*Mr. Milton B. Conford* argued the cause for the respondents (*Mr. James M. Davis, Jr.* and *Mr. John A. Matthews*, attorneys).

The opinion of the court was delivered by

BIGELOW, J. A. D. The defendants appeal from an order of the Chancery Division allowing counsel fees to plaintiffs' attorneys and directing payment thereof out of the "general funds on hand" of the defendant, Burlington County Bridge Commission. Instead of reciting the facts leading to this litigation, we make reference to *Haines v. Burlington, etc., Com.,* 1 *N. J. Super.* 163 (*App. Div.* 1949) ; *Driscoll v. Burlington-Bristol Bridge Co.,* 10 *N. J. Super.* 545 (*Ch. Div.* 1950) ; certif. granted; 7 *N. J.* 78 (1951).

Appellants contend that the funds out of which payment of the fees is directed, are not a "fund in court" and hence the allowance is erroneous.

Upon the institution of this cause in October, 1948, the Superior Court imposed drastic restraints on the Bridge Commission and other defendants. While the Commission was permitted to operate the bridges and to collect the tolls and "to pay actual operation, protection and maintenance expenses," the Commission was forbidden to disburse its funds for other purposes and especially for interest or sinking fund of the bonds which had been issued to raise the purchase price of the bridges. A few days later, the court appointed a receiver to take possession of the bridges, operate them and hold any excess funds pending the litigation. Upon appeal, the injunction was affirmed, but the order for the receiver was reversed; and so the Bridge Commission continued to manage the bridges and to hold its general funds, including the excess revenues in accordance with the injunction. Not long afterward, the Attorney General, at the direction of the Governor, began the action entitled *Driscoll v. Burlington, etc., Company,* and the two suits were consolidated for trial in the Chancery Division. Before the causes came on for trial, the Attorney General moved for the dismissal of the

*Haines* suit and the allowance of counsel fees to the plaintiffs therein. Although this motion received the consent of all concerned, the court considered it better to stay rather than dismiss the *Haines* suit and to defer action in respect to counsel fees. This decision was given effect by order dated February 2, 1950, and by the same order the restraints above mentioned were reimposed in the *Driscoll* suit, except that the Bridge Commission was allowed to pay certain taxes as well as the salaries of the commissioners and their counsel.

In due course, the *Driscoll* case came to a final hearing and on December 29,1950, the order was made from which appeal has been taken, dismissing the *Haines* action without prejudice, and allowing the counsel fees. At the same time, final judgment was made in the *Driscoll* case adjudicating the rights of all the parties, ordering the bridge commissioners to account for their receipts and disbursements, and making direction for the distribution of the properties and funds held by them.

The authority of the English Court of Chancery to award costs and counsel fees has sometimes been traced to a statute of 1394, which empowered the Chancellor, upon finding the allegations of the plaintiff to be untrue, "to ordain and award damages according to his discretion, to him who is so troubled unduly." But upon repeal of the statute, the court of appeal determined that Chancery's power existed in independence of any statute. *Andrews v. Barnes,* 39 *Ch. Div.* 133 (1888). In that cause, a decree was upheld which burdened the plaintiff with the costs of his opponent, a trustee, taxed as between solicitor and client. The opinion makes clear that costs so taxed embrace the whole amount due to the solicitor, including the fee or honorarium of the counsel. For some consideration of costs as between attorney and client, see *Strong v. Mundy,* 52 *N. J. Eq.* 833 (*E. & A.* 1894).

Two cases of Lord Hardwicke are cited in the *Andrews* opinion: *Jones v. Coxeter,* 2 *Atk.* 400; 26 *Eng. Rep.* 642 (1742), in which, by an interlocutory order, the defendant was required to pay plaintiff a sum to be taxed by the master,

so as to empower the plaintiff to go on with the cause. The Chancellor said, "The giving of costs in Chancery is entirely discretionary and is not at all conformable to the rule of law." And in *Burford v. Lenthall*, 2 *Atk.* 551, 26 *Eng. Rep.* 731 (1743), the same great judge derived equity's authority over costs "from conscience and *arbitrio boni viri.*" For other early cases, see 1 *Eq. Cas. Abr.* 125; 21 *Eng. Rep.* 930; 2 *Eq. Cas. Abr.* 237; 22 *Eng. Rep.* 202 (1667-1744), and 2 *Com. Dig. Chancery: Costs, p.* 426.

From an early day, a distinction was noted between a decree for costs against a party *in personam*, and a decree that imposed the costs on a fund. Thus in *Johnson v. Peck*, 2 *Ves.* 465; 28 *Eng. Rep.* 298 (1752), costs were ordered paid out of the assets of testator and in *Blower v. Morrets*, 3 *Atk.* 772, 26 *Eng. Rep.* 1242 (1754), they were made a charge on real estate. In New Jersey, we have departed from the English precedents as to the amount and nature of costs to be taxed, and in the absence of statute, do not include in the costs a counsel fee of substantial amount. But we recognize the distinction between the assessment of costs and counsel fees against a party and against a fund. Familiar examples of the latter occur in cases of partition of land, foreclosure of mortgages and tax liens, interpleader, winding up of corporations and partnerships, accounting by fiduciaries, construction of wills, distribution of decedents' estates, and a great variety of litigation over trusts.

The rule promulgated by our Supreme Court prohibits the allowance of a fee for legal services except (a) in a matrimonial action, (b) or out of a fund in court, (c) or in an action for the foreclosure of a mortgage, (d) "or as [otherwise] provided by these rules." Originally, the exceptions included those instances in which the allowance of a counsel fee was authorized "by law," but this exception has been eliminated.

The expression "fund in court" cannot be taken to mean nothing else than money deposited with the Clerk, but must be given a reasonably liberal interpretation, and probably

includes lands or assets which are subject to the control of the court and upon which, by principles followed before the adoption of the rules, counsel fees might be charged. Of course, it would be both hazardous and inadvisable to attempt to catalogue all the situations in which a counsel fee could properly be so charged. *Cintas v. American Car & Foundry Co.*, 133 *N. J. Eq.* 301 (*Ch.* 1933), affirmed 135 *N. J. Eq.* 305 (*E. & A.* 1944), illustrates the elasticity of the concept.

To return to the case on appeal before us. From the time the suit was instituted, the court, by the exercise of the injunctive power, controlled the assets of the Bridge Commission as fully as if they had been in the hands of a receiver. Indeed, an influential factor leading to the reversal of the order appointing a receiver, was the efficacy of the injunction. This suit, brought by the plaintiffs in the capacity of citizens and taxpayers, preserved the *status quo* until the Governor, after full investigation, joined in the attack. The latter suit resulted in a decree for the distribution of all the properties and monies of the Commission. Clearly, so it seems to us, the assets of the Commission constituted a fund in court within the meaning of the rule. The prompt and vigorous action of the plaintiffs in bringing this suit and prosecuting it until the Attorney General was ready to take over, resulted in the preservation of the fund for the State and for all the other parties whose interests in it have been established by the decree.

The reasonableness of the *quantum* of the fee allowed is conceded by the appellants.

Decree affirmed with costs.